IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY J. POLK, et al., | ) | |
| Plaintiffs, | ) | |
| vs. | ) | No.  3:05-CV-0861-G (BH) |
| | ) | ECF |
| CITY OF CORSICANA, et al., | ) | Referred to U.S. Magistrate Judge |
| Defendants. | ) | |
| | ) | (Consolidated with No. 3:05-CV-0894-G) |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court in implementa-

tion thereof, subject cause has previously been referred to the United States Magistrate Judge.  The

findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I.  BACKGROUND AND PROCEDURAL HISTORY

A.     Original Pleadings

On April 21, 2005, plaintiff Mary J. Polk commenced this civil action by filing a one-page

complaint against defendant City of Corsicana (the City) which states:

> I want back what's rightfully mine, what the court has stolen from me, my daughter,
> [].  The county has intentionally allowed the father Odell Johnson to abuse my
> daughter.  The county is not intending to do anything about the father['s] crime
> against my daughter.  The county has intentionally allowed the babysitter Tammy
> Andrews to abuse my daughter.  The county has chosen to do nothing about her.
> The county has intentionally allowed a sex offender to be around my daughter
> whenever he choses [sic].  The court has slandered my name and reputation.  The
> county has stripped my rights away.  I have been wrongfully falsely accused of being
> a [sic] unfit mother.

(Compl. filed in Cause No. 3:05-CV-0861-G.)  The Complaint then lists without further elaboration

the  following  claims:   conversion,  default,  "false  misrepresentation",  revenge,  slander,  false

accusation, malicious accusation, and plot.  (Id.)  Mary Polk (hereinafter "the Mother") also attaches

to her complaint a three-page letter to "The Founder and President Lee Alcorn" in which she sets forth various allegations related to the taking of her daughter (hereinafter "the Child") under false allegations. (*See* Attach. to Compl. filed in Cause No. 3:05-CV-0861-G.)

On April 25, 2005, plaintiff Daisy Polk (hereinafter "the Grandmother") commenced a civil action[1] by filing a complaint against the City and Navarro County (the County) which alleges that state District Judge John H. Jackson is corrupt and intentionally and recklessly disregarded the safety of her granddaughter. (*See* Compl. filed in Cause No. 3:05-CV-0894-G.) The Complaint further alleges that Judge Jackson abused his judicial power to steal the Child from the Grandmother despite knowledge that the Child was being abused by her father, Odell Johnson (hereinafter "the Father"), his male friends, and a babysitter. (*Id.* at 2.) The Complaint alleges a conspiracy between Judge Jackson, attorney Kerri Anderson Donica (the ex-husband's attorney during the divorce and custody proceedings), and others to cover up for the Father's abuse and molestation of the Child. (*Id.*) Attached to the Grandmother's complaint is a five-page document which the Court construes as a memorandum in support. (*See* Attach. to Compl. filed in Cause No. 3:05-CV-0894-G.) The supporting document describes alleged misconduct of Judge Jackson and Attorney Donica for failing to protect the Child from alleged abuse from a babysitter, the Father, and his male friends. (*Id.*) It also alleges that Judge Jackson wrongfully gave custody of the Child to the Father; wrongfully gave the Mother's separate property to the Father during the divorce proceedings, thus depriving the Mother of her residence from June 21, 2002, through December 1, 2002; and wrongfully placed a lien on the residence when it was returned to the Mother in December 2002. (*Id.*)

---

[1]  The District Court entered an order consolidating the Grandmother's action with the Mother's action under Cause No. 3:05-CV-0861-G on May 12, 2005.

**B. Magistrate Judge's Questionnaire**

On May 5, 2005, the Court mailed the Mother a Magistrate Judge's Questionnaire (MJQ) consisting of eleven questions in an effort to flesh out the complaint and to ascertain the jurisdictional basis for this federal action. Plaintiffs jointly[2] filed lengthy answers to the MJQ on June 6, 2005.[3] Plaintiffs provide no answer to the Court's inquiry regarding identification of the specific basis for federal jurisdiction but instead provide numerous attachments (approximately one-half inch in depth) that provide no jurisdictional basis for this action. (*See* Answer Quest. 1 (showing a blank answer section with numerous attachments) and Attach.) The attachments set forth plaintiffs' claim that Judge Jackson granted custody of the Child to the Father despite allegations by plaintiffs of sexual and other abuse, and that Judge Jackson entered an illegal order regarding title of property related to the divorce proceedings. (*See id.*)

In their answers, plaintiffs allege various policies at Corsicana's Police Department; the office of social worker Pamela Crawford; the office of District Attorney Steve Keathley; the Navarro County Courthouse; the offices of attorneys Robert E. York and Kerri Donica; Child Protective Services (CPS); and the Medical Arts Clinic in Corsicana which violated their civil rights. (*See* Answer Quest. 2.) Plaintiffs' answers also elaborate on their claims of conversion, default, "false

---

[2] Although the Court mailed the MJQ to the mother before consolidation of the two actions, both plaintiffs verified the answers for this consolidated action. (*See* Verification attached to end of answers.) Despite the joint verification, some answers or portions of answers merely indicate that the answer or portion of the answer applies only to claims of the Mother. Other answers, however, are less clear with respect to whether they apply to the Grandmother. In an abundance of caution and in view of the joint verification, the Court liberally construes the answers to the MJQ as applying equally to the Mother and Grandmother.

[3] Plaintiffs' answers to the questions posed by the Court constitute an amendment to the filed complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

misrepresentation", revenge, slander, false accusation, malicious accusation, and plot.[4] (*See* Answer Quest. 7.)  In addition, plaintiffs seek to add twenty-five new defendants.[5]  (*See* Answer Quest. 10-11.)  Finally, plaintiffs' answers set forth the relief they seek in this action, including the filing of charges against certain defendants as well as monetary damages.[6]  (*See* Answer Quest. 9.)

C. **Later Filings by Plaintiffs**

On June 17, 2005, the mother filed a several-page document that the Court construes as additional answers to the MJQ.  The June 17 document reiterates much of the contents contained

---

[4] In particular, the conversion and misrepresentation claims relate to alleged deprivation of the Mother's residence from June through December 2002 due to false and misleading statements by Judge Jackson in a court ruling.  (*See* Answer to Quest. 7.)  The slander claim relates to statements made about the Mother in 2002 by Karen Griffin, Douglas Cheatham, Attorney Donica, and Judge Jackson.  (*Id.*)  The malicious and false accusation claims relate to Judge Jackson's ruling in 2002 that the Mother neglected her baby and that the Child be placed in a foster home.  (*Id.*)  Plaintiffs also allege that social worker Pamela Crawford made malicious accusations to remove the Child from the Mother's home.  (*Id.*)  The claim of default relates to an alleged failure of Judge Jackson to perform his legal or contractual duties to uphold the law in 2002 by issuing rulings contrary to the interests of plaintiffs as well as to a failure of District Attorney Keathley to prosecute the Father in November 2004, after Judge Jackson told the District Attorney not to pursue the case.  (*Id.*)  Plaintiffs contend that the actions of the judge constitutes obstruction of justice, and Keathley also obstructed justice in March 2005 when he withheld evidence from the grand jury hearing evidence against the ex-husband.  (*Id.*)  The plot claim essentially alleges a grand conspiracy to aid the Father while discriminating against the Mother and the Child.  (*Id.*)  In explaining the revenge claim, plaintiffs assert that Attorney Donica planned the conspiracy to take the Child out of revenge and used Judge Jackson's authority to work the conspiracy.  (*Id.*)  They further assert that Judge Jackson's emotional attachment to Ms. Donica and the Father caused him to use his power to rule against the Mother.  (*Id.*)  The alleged revenge essentially provides the motive for the alleged conspiracy.

[5] Plaintiffs specifically add and/or provide addresses for the following individuals as defendants in this action: (1) Karen Griffin, CPS Supervisor; (2) Michael Fautt of CPS; (3) Paula Brandon Lee, CPS Supervisor; (4) Dr. Douglas Cheatham; (5) Medical Arts Clinic Association; (6) Dr. Allison Ziari of the Medical Arts Clinic; (7) Dr. Gary Fagan of Navarro Regional Hospital; (8) Judge Jackson; (9) Kerri Donica; (10) District Attorney Keathley; (11) Pamela D. Crawford; (12) G.M. Cox, Chief of Police of Corsicana Police Department; (13) Kenneth K. Kirtwood, Captain of Police; (14) Bertha Ziadle, Juvenile Detective; (15) Becky Simpson of the Corsicana Police Department; (16) C.L. Buster Brown, Mayor of Corsicana; (17) Attorney Daniel Barnes; (18) Attorney Robert York; (19) Attorney Lauri Anderson; (20) Attorney James E. Polk II; (21) Attorney Christopher E. Martin; (22) Dr. Richard Nail of Children's Medical Center Hospital; (23) Tamara Andrew; (24) Marshall Andrew; and (25) Odell Alan Johnson, a.k.a. Butch.  (*See* Answers Quest. 10 and 11.)

[6] Plaintiffs indicate that they want "charges brought against" Dr. Cheatham; Pamela Crawford; the Corsicana Police Department; Lauri Anderson; James E. Polk II; Tamara Andrew; Marshall Andrew; District Attorney Keathley; Richard Nail; Dr. Gary Fagan; Robert York; Medical Arts Clinic; all CPS defendants; Attorney Donica; and the Father.  (*See* Answer Quest. 9.)  The Mother also wants the Child back and for Judge Jackson and Attorney Donica to have no further authority over her or her daughter's life.  (*Id.*)  She also wants monetary damages from the City of Corsicana and Navarro County.  (*Id.*)

within their answers to the MJQ and the voluminous documents attached thereto, but it also

provides an address for a twenty-sixth defendant, Vicki Gray, Justice of the Peace in Navarro

County.[7]  In addition, the document provides additional answers regarding the relief plaintiffs seek

against certain defendants, including a request for charges to be brought against Attorney

Christopher Martin and Judge Jackson and to "sue" Ms. Gray for her failure to take action in

October 2004 on allegations of abuse of the Child.

On June 30, 2005, plaintiffs filed a several-page document that the Court construes as

additional material related to this case.  The June 30 document sets out plaintiffs' unverified

response to the allegations set forth a "Motion to Modify Temporary Orders" filed by Attorney

Donica and set for hearing by Judge Jackson.

On July 14, 2005, the grandmother filed an affidavit in which she makes averments regarding

facts surrounding events that occurred in October 2004 and March 2005 related to District Attorney

Keathley.

Subsequently, plaintiff submitted sixteen various unsigned documents with attachments and

an eight-page document received on October 28, 2005.[8]  Although most of these documents simply

reiterate the claims and facts contained in prior filings, they are notable in two respects.  A letter

filed August 17, 2005, specifically indicates that this Court should deem void Judge Jackson's ruling

regarding custody of the Child and his ruling regarding the mother's property.  The eight-page

---

[7] Because answers to a MJQ constitute an amendment to the complaint, the Court has directed the Clerk's Office to update the docket in this consolidated action to reflect the twenty-six new defendants in addition to the two defendants originally named – City of Corsicana and Navarro County.

[8] The Clerk's Office initially opened the eight-page document as a separate civil action.  The Court, however, recently administratively closed that action and ordered the eight-page document to be filed in this action.  *See Polk v. City of Corsicana*, No. 3:05-CV- 2127-M (N.D. Tex.) (order of administrative closure).

document received from the mother on October 28, 2005, and a document received November 21, 2005, titled "Constitutional Tort" both indicate that plaintiffs seek to proceed under 42 U.S.C. § 1983.

**D. Summary of Claims, Defendants, and Relief Sought**

The Court construes this action as a suit against twenty-eight various individuals and entities for alleged violations of civil rights under 42 U.S.C. § 1983 which primarily occurred in 2002. Plaintiffs also assert claims based upon state law, *e.g.*, conversion and slander.  They seek monetary damages from the two original defendants, the City and County, for acts and omissions concerning divorce, custody, and termination-of-parental-rights proceedings involving the Mother and the Child in 2002 and for claimed failures to investigate and prosecute alleged abuse of the Child post-2002. They want criminal charges brought against many of the later-named twenty-six defendants.  For some defendants, they fail to state any relief that they seek.  No process has been issued in this case.

As a preliminary matter, the Court examines whether plaintiffs have stated a valid basis for this Court's exercise of jurisdiction over this case.

## II. JURISDICTION

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

Courts have "a continuing obligation to examine the basis for their jurisdiction." *See MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990).  The Court may *sua sponte* raise the jurisdictional issue at any time.  *Id.*; *Burge v. Parish of St. Tammany*, 187 F.3d 452, 465-66 (5th Cir. 1999).  In fact, Fed. R. Civ. P. 12(h)(3) requires that federal courts dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter."

To aid in determining the existence of federal jurisdiction, Fed. R. Civ. P. 8(a) requires plaintiffs to make a "short and plain statement of the grounds upon which the court's jurisdiction depends."  Contrary to Rule 8(a), neither original complaint filed in this consolidated action stated a basis for federal jurisdiction.  Furthermore, although Question 1 of the MJQ specifically asked for identification of "the statutory or other basis that provides federal jurisdiction over [the] complaint", plaintiffs provide no answer to the question, but instead provide numerous attachments, none of which provide a basis for federal jurisdiction.  (*See* Answer Quest. 1 and attachments thereto.)  The attachments merely set forth various allegations of error and misconduct by Judge Jackson related to the custody of the Child and divorce proceedings between her parents.  (*See* Attach. to Answer Quest. 1.)  Nevertheless, despite no specific reference to 42 U.S.C. § 1983, the answers to the MJQ suggest pursuit of some claims under that statute.  This appearance is buttressed by the documents received on October 28 and November 21, 2005 in which plaintiffs specifically assert that they proceed pursuant to § 1983.

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United

States, and . . . it afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). Although plaintiffs have invoked § 1983 as a jurisdictional basis for their federal claims, such invocation does not necessarily bestow federal jurisdiction over this action. Not only must plaintiffs assert a basis for federal jurisdiction, *see* Fed. R. Civ. P. 8(a), but they have the burden to establish such jurisdictional basis, *see Howery*, 243 F.3d at 916. Plaintiffs' allegations in this case suggest two potential problems with federal jurisdiction. The Court first examines whether plaintiffs have standing to pursue their claims. It then examines whether the *Rooker-Feldman* doctrine[9] divests this Court of jurisdiction.

## A.  Standing

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). This requirement, like other jurisdictional requirements, is "not subject to waiver." *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996). The Supreme Court, furthermore "insist[s] on strict compliance" with the requirement. *Raines*, 521 U.S. at 819. To meet the standing requirement plaintiffs "must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* at 818 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). They "must establish . . . a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particu-

---

[9] This doctrine is named after *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). These decisions "exhibit the limited circumstances in which [the Supreme] Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 125 S. Ct. 1517, 1526 (2005).

larized as to [them]." *Id.* at 819. Furthermore, "the alleged injury must be legally and judicially cognizable." *Id.*

In this instance, plaintiffs seek relief under 42 U.S.C. § 1983 against numerous defendants for acts or omissions concerning the defendants' involvement with alleged abuse of the Child and with the state-court proceedings involving the Mother and Child. Other than seeking monetary damages against the City and County, plaintiffs seek criminal charges against the named defendants. However, to the extent plaintiffs seek to criminally prosecute a defendant, "such relief is not available in a § 1983 civil rights action." *See Worthy v. Francis*, No. 3:02-CV-2102-N, 2002 WL 31553847, at *2 (N.D. Tex. Nov. 14, 2002) (accepting recommendation of magistrate judge). "Criminal statutes can neither be enforced by civil action nor by private parties." *Hassell v. United States*, No. 3:97-CV-1882-P, 1999 WL 444554, at *2 (N.D. Tex. May 28, 1999). There is no constitutional right to have someone criminally prosecuted. *See Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).

Because plaintiffs have sought no relief available under § 1983 for any defendant other than the City and County, they have alleged no personal injury against the other defendants that is likely to be redressed by the requested relief. Consequently, they lack standing to sue for such relief, and this action should be dismissed for lack of jurisdiction to the extent plaintiffs pursue relief under § 1983 against defendants other than the City and County.

Plaintiffs' claims against the City and County concern acts and omissions from 2002 related to court proceedings before Judge Jackson and later acts and omissions concerning failures to investigate and prosecute allegations of abuse of the Child. Although both plaintiffs allege a

9

personal injury from the court proceedings, the Court is unable to discern a cognizable personal injury to the Grandmother stemming from those proceedings.  Nothing of record indicates that the Grandmother was either a party to those proceedings or possessed legal guardianship or custody rights regarding the Child.  To the contrary, submitted documents related to the proceedings show that the Child and her parents were the only parties to them.  Everything of record, furthermore, indicates that, the Mother and Father had various levels of legal custody during the relevant periods and that, at some point, the State terminated the Mother's parental rights and placed the Child in a foster home.  In light of all of these matters of record, the Grandmother has not carried her burden to show that she has standing to pursue claims concerning the court proceedings.  She has shown no legally recognized right belonging to her with respect to those proceedings.  Consequently, she has failed to show that she has standing to sue for acts or omissions concerning such proceedings. *See Raines*, 521 U.S. at 819.  On the other hand, the matters of record clearly demonstrate the Mother's standing to pursue claims concerning such proceedings.

With respect to the claims concerning the alleged failures to investigate and prosecute[10] alleged abuse of the Child, neither plaintiff has standing.  As already mentioned, there is no constitutional right to have someone criminally prosecuted. *See Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).  There is likewise no constitutional right to have someone investigated for an alleged crime. *See Autrey v. Mississippi*, 66 Fed. App'x 523, 523 (5th Cir. 2003) (per curiam); *Bloch v. Lake*, No. 3:03-CV-2965-G, 2004 WL 1084720, at *4 (N.D. Tex. May 10, 2004) (findings, conclusions, and recommendation), *adopted by* 2004 WL 1208904 (N.D. Tex. June 1, 2004).  Plaintiffs have no stand-

---

[10]  The Court considers the failure-to-prosecute claim as encompassing plaintiffs' allegation that District Attorney Keathley withheld evidence from the grand jury.

ing to sue for alleged acts or omissions that do not infringe upon a legally recognized right belonging to them. *Raines*, 521 U.S. at 819; *Autrey*, 66 Fed. App'x at 523. Furthermore, although parents certainly "feel[] the injury to a tremendous extent when [their child] suffers [injury]", a parent has no "civil right to pursue" an action pursuant to § 1983 for injuries to their child. *Dohaish v. Tooley*, 670 F.2d 934, 937 (10th Cir. 1982) (cited with approval in *Autrey*). A "civil rights action is a personal suit" that "does not accrue to a relative" but may "descend to a relative under appropriate circumstances."[11] *Id.* at 936.

For the reasons stated herein, the Grandmother has no standing to pursue any asserted claim under § 1983, and the Mother only has standing to pursue asserted claims concerning the state court proceedings.

**B. _Rooker-Feldman_**

Pursuant to 42 U.S.C. § 1983, plaintiffs attempt to pursue various claims that stem from allegedly erroneous rulings of Judge Jackson. Although § 1983 provides a proper jurisdictional basis in some cases, "litigants may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast in the form of civil rights suits." *See Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986). With the *Rooker-Feldman* doctrine, the Supreme Court "definitively estab-

---

[11] Rule 17(c) of the Federal Rules of Civil Procedure provides circumstances when a parent or guardian may sue on behalf of an infant or minor. Plaintiffs, however, have not proceeded with this action on behalf of the Child. There is no authority, moreover, for permitting a parent or guardian to file an action on behalf of a minor child without legal representation for the child. To the contrary, there is "clear precedent" for not allowing a parent or guardian to represent a child without obtaining legal representation. *See Martin v. Revere Smelting & Refining Corp.*, No. 3:03-CV-2589-D, 2004 WL 852354, at *2 (N.D. Tex. Apr. 16, 2004) (recommendation of magistrate judge setting forth precedent), *adopted in part by* 2004 WL 1161373 (N.D. Tex. May 24, 2004). To proceed with an action on behalf of the Child, plaintiffs "must retain legal counsel to protect [her] interests." *Id.* Although plaintiffs have filed motions for appointment in this action, the motions do not address appointment of counsel for the Child. Moreover, contemporaneously with these findings, the Court has denied all motions for appointment of counsel. A motion to appoint counsel for the Child would fail for similar reasons.

11

lished . . . that 'federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts.'" *See Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar*, 18 F.3d 315, 317 (5th Cir. 1994)). "This jurisdictional bar is not limited to actions in federal court that explicitly seek review of a state court decision, but also extends to those 'in which the constitutional claims presented . . . are inextricably intertwined with the state court's grant or denial of relief.'" *Jordaan v. Hall*, 275 F. Supp. 2d 778, 788 (N.D. Tex. 2003) (quoting *Hale*, 786 F.2d at 691).

Under *Rooker-Feldman*, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). "It is hornbook law that no court of the United States – other than the United States Supreme Court – can entertain a proceeding to reverse, modify, or otherwise engage in an appellate review of, a state court decision." *Jordaan*, 275 F. Supp. 2d at 788. When a federal action attempts to circumvent the state appellate process to collaterally attack the validity of state court judgments and final orders, the lower federal courts lack subject matter jurisdiction over such action. *See id.* at 788-89.

Although the Supreme Court recently sought to clarify the precise contours of the *Rooker-Feldman* doctrine in light of various interpretations "in the lower courts," the clarification does not appear to alter the cited precedent. *See Exxon Mobil Corp. v. Saudi Basic Indus.*, 125 S. Ct. 1517, 1521-28 (2005). As delineated by *Exxon Mobil Corp.*, "the *Rooker-Feldman* doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments

12

rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 1521-22.

Other than the invocation of § 1983, the instant case presents no federal claim for adjudication. For the most part, this action, like the action in *Jordaan*,[12] "is nothing more than a thinly veiled attempt to circumvent the state appellate process and to collaterally attack – in the guise of a federal civil rights action – the validity of a state court divorce decree and other related orders." *See Jordaan*, 275 F. Supp. 2d at 789. Because the Mother's claims concerning the state court proceedings are "inextricably intertwined" with the rulings of the state court, this Court lacks subject matter jurisdiction to entertain such claims. *See id.* at 788-89.

In summary, the *Rooker-Feldman* doctrine divests this Court of jurisdiction over the Mother's claims concerning the court proceedings, and both plaintiffs lack standing to pursue their other asserted federal claims. Consequently, the Court should dismiss all of plaintiffs' federal claims for lack of jurisdiction.

### III. PENDENT STATE-LAW CLAIMS

Plaintiffs also assert various state-law claims. Section 1367 of Title 28 of the United States Code permits federal courts to exercise supplemental jurisdiction over pendent state claims. Whether to exercise such jurisdiction after dismissing the underlying federal claims is a matter left to the sound discretion of the Court. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000). When the Court dis-

---

[12] Unlike *Jordaan*, this case involves a plaintiff who was a nonparty to the state court proceedings. Although *Rooker-Feldman* presents no bar to a federal suit brought by a nonparty to the state suit, *see De Grandy*, 512 U.S. at 1006, the Court has already determined that the Grandmother lacks standing to pursue any claim under § 1983.

misses the federal claims at a preliminary stage of litigation, judicial economy argues against the exercise of pendent or supplemental jurisdiction over state claims. *See LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986).

In this instance, if the Court dismisses plaintiffs' federal claims in accordance with these findings and recommendation, it should decline to exercise pendent or supplemental jurisdiction over their state claims. The Court should dismiss the state claims without prejudice to plaintiffs pursuing them in state court. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

## IV.  RECOMMENDATION

For the foregoing reasons, it is recommended that the Court **DISMISS** plaintiffs' federal claims for lack of jurisdiction. It is further recommended that the Court summarily **DISMISS** the pendent state claims without prejudice to plaintiffs pursuing them in state court.

**SIGNED this 24th day of January, 2006.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on plaintiff by mailing a copy to him. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

15